NATHANIEL A. JACOBY, PROSECUTOR, v. THE GOVERNING BODY, TO WIT, THE MAYOR AND COUNCIL OF THE BOROUGH OF CARTERET, RESPONDENT.

Submitted October term, 1933—Decided February 7, 1934.

Before Justices CASE, BODINE and DONGES.

For the prosecutor, *Nathaniel A. Jacoby, pro se.*

For the respondent, *Elmer E. Brown.*

The opinion of the court was delivered by

CASE, J. The writ brings up the following resolution adopted by the mayor and common council of the borough of Carteret on February 23d, 1933:

"Whereas, there now exists in the borough of Carteret the office of borough recorder, and whereas the duties of this office are such that same can be readily handled through the police department and tried by a local justice of the peace, and whereas cases that require action by the grand jury are paid for by the county of Middlesex, and whereas the salary of this office for the year 1932 there was appropriated the sum of $1,500 and whereas the revenue realized amounted to $255.11. Therefore in the interest of economy be it and it is hereby resolved by the mayor and borough council that the office of recorder be abolished and be it further resolved that this resolution shall take effect immediately."

The prosecutor had, by resolution passed November 17th, 1930, under the authority of *Pamph. L.* 1927, *ch.* 260, been appointed to a five-year term as borough recorder. He contends that the bias of partisan politics was the real reason for the abolishment of his office; that the asserting of economy was but a subterfuge; that the borough government had not the legal right to pass the resolution under review and that he should be reinstated in office. Nevertheless, he concedes that the borough council had the power to abolish the office provided such action was taken in good faith and in the public interest; and that is in line with our cases. *Paddock* v. *Hudson Tax Board,* 82 *N. J. L.* 360; 83 *Atl. Rep.* 185; *Doyle* v. *Secaucus,* 10 *N. J. Mis. R.* 334; 159 *Atl. Rep.* 399.

The prosecutor was first appointed borough recorder in 1923 or 1924 and had served continuously from that time. It does not appear for what term he was then appointed or what intermediate appointments there had been. The election in November, 1930, was such that the political complexion of the borough administration, effective January 1st, 1931, was changed. On November 17th, 1930, immediately following the election, a resolution was passed declaring the office of borough recorder vacant and appointing the prosecutor to that office for a term of five years from January 1st, 1930. The salary, theretofore $1,900, was simultaneously increased to $2,500 per annum. In March, 1931, there were a number of borough salary reductions, and prosecutor's salary was reduced to $1,500. In April, 1932, a contribution,

perhaps compulsory, of a sum equal to one month's salary was made to the borough by all employes and appointees, including the prosecutor. Again, in March, 1933, subsequent to the removal resolution, the annual salaries of borough employes and appointees were uniformly reduced by one-fourth, later, in order to correspond with the reductions made by the board of education, modified to one-fifth. The borough of Carteret was, in common with all other governmental units, suffering from the financial depression. Borough salaries were in arrears for lack of funds. Taxes due from the borough to other governmental instrumentalities were unpaid. That there was urgent need for economies cannot be gainsaid. Drastic reductions were made in all departmental budgets. The depletion in revenues from the recorder's office is shown by this graphic statement of receipts: 1929, $3,137.20; 1930, $3,323.29; 1931, $1,115.51; 1932, $225.11; 1933 (January 1st to February 23d), $26.71.

Prosecutor learned from unofficial sources of the resolution of February 23d, 1933, forthwith upon its passage, but nevertheless continued to serve, without interference, until May 1st, 1933, or immediately thereafter. On May 1st the borough made payment of arrears in salaries to its employes. Prosecutor, receiving no payment, made demand for the same and was refused. He accepted this refusal, he says, as his official information of the passage of the resolution and thereupon informed the police authorities that he would no longer act.

In charging that the pursuit of economy was a mere scheme for divesting him of his office, prosecutor leans upon the facts that the borough government did not designate a justice of the peace to hear the police matters, but in June, 1933, passed an ordinance creating the office of "police justice," the incumbent to serve without salary but to retain his fees and costs, and made an appointment to that office. The assertion is, and the truth of it is admitted, that the duties earlier performed by the recorder are necessary to the welfare of the borough and are now performed by the police justice. Nevertheless the prosecutor is not, in our opinion, entitled to prevail.

Whatever right the prosecutor may or may not have had to continue in his office after the passage of the resolution of removal, he had knowledge—however obtained—of the passage. He had as much knowledge in February as in May. The significance of the latter date is that he was then assured that he was to receive no compensation, and the fair inference is that he was unwilling to perform the duties of the office without a salary. We cannot say that the resolution was not passed in good faith in the effort to save, as it apparently did save, a considerable sum to the borough treasury. Prosecutor, on full notice that the council intended to have the recorder's duties performed without compensation other than the statutory fees and costs incident to the matters handled, at no time intimated that he would serve for such emoluments or for their equivalent in salary. It is reasonably demonstrated that at the time of the passage of the February resolution the borough council did actually intend to have police matters disposed of by a justice of the peace. The later introduction and passage of the police justice ordinance do not disprove the good faith of the council. The compensation accruing to the police justice under the ordinance is precisely the compensation that would have accrued to a justice of the peace, namely, the fees and costs incident to the several proceedings. It was said in *Buckley* v. *Guttenberg,* 87 *N. J. L.* 434; 95 *Atl. Rep.* 120, that to establish a charge of fraudulent conduct against a legislative body in passing an ordinance, the proof must be clear and convincing. The proofs here do not meet that test. The case falls on its merits.

In addition there is this: With knowledge of the resolution from the time of its passage the prosecutor remained quiescent until late in July, a period of five months, before suing out this writ of *certiorari* to review the borough action, the council meanwhile having, by ordinance introduced on June 7th, advertised on June 9th, adopted on June 21st, set up, without remonstrance from the prosecutor, a new scheme for administering the functions of the office. Whatever doubts he entertained as to the underlying motive of the borough council, he knew that the municipality was in serious

financial straits and that the removal resolution formally recited the depletion in income and the need for economy as the reasons for its passage. He was an attorney, learned in the law and now argues his case in his own behalf. It was not for him, in a public and private financial emergency that was perhaps without precedent in both degree and universality, to loiter while the borough government was taking successive steps toward the goal, at least ostensible, of limiting outgo to income. What constitutes *laches* in applying for a discretionary writ must vary as the cases vary, but in that period of financial stress, when all governmental bodies were sweating under the load, it was, we think, *laches* for one in the prosecutor's place to wait as he waited.

The writ is dismissed, without costs.